# IN THE COURT OF APPEALS OF IOWA

No. 22-0151
Filed March 30, 2022

**IN THE INTEREST OF I.N. and N.N.,**
**Minor Children,**

**A.N., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie Bryner, District

Associate Judge.

A mother appeals the order terminating her parental rights. **AFFIRMED**.

Annette F. Martin, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee state.

Kim Opatz of Linn County Advocate, Cedar Rapids, for minor children.

Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

The mother of ten-year-old I.N. and three-year-old N.N. appeals the juvenile court's order terminating her parental rights to the children.

**I.     Factual and Procedural Background**

This family became involved with the Iowa Department of Human Services (DHS) in 2011.  Involvement continued periodically thereafter.  In 2017, the DHS discovered that the older child was playing outside unsupervised and going into other people's homes uninvited.  An investigation that followed revealed that the older child tested positive for illegal drugs.  It was determined that a person living in the home with the mother and child was the person who exposed the older child to the illegal drugs.  While the children originally remained in the mother's custody, they were removed from the mother's custody in 2018.

As the DHS worked with the family, the DHS became aware that the mother did not maintain her home in a safe condition.  The conditions were described as "deplorable."  For a time, visits were moved to the office of a care facility due to the condition of the home.  The mother's inability to manage the older child's behaviors at the facility caused disruption of the services others received at the facility, so the visits were eventually returned to the mother's home after additional safety checks were implemented before visits.  Despite utilizing numerous services to maintain the cleanliness of her home, she failed to achieve any sustained success in that regard.  The small apartment remains consistently unclean and unsafe.  It is excessively cluttered, including garbage and food that is left out, resulting in foul odors and flying insect infestation.  The mother also neglects to clean the litter box,

resulting in animal feces in the home and a strong odor of animal urine and feces throughout the apartment.

In addition to failing to maintain the condition of her home, she has allowed registered sex offenders to reside in her home since the children's removal. She seems unable to recognize the danger this poses to her children if they were returned to her care.

The mother has also failed to consistently schedule and attend the children's appointments. Due to the older child's diagnoses, there are several appointments required to ensure his physical, emotional, and educational needs are being met. Based on past failures on this front, the juvenile court specifically ordered the mother to take charge of scheduling these appointments and attending them with the children. However, she failed to do so, so the foster mother scheduled and attended appointments with the children instead. The mother has been largely unable to exhibit the ability to independently ensure that basic needs of the children are met.

An additional concern has been the mother's inability to parent the children during her visitation time. She exhibited difficulty positively engaging with the children during their interactions. She is unable to effectively manage the older child's behaviors. She escalates the situation by yelling at the child, even though she has been repeatedly instructed on how to use other methods to effectively address these situations. When the child runs away, as he tends to do when things escalate, the mother is unable to effectively intervene and frequently needs the help of others to retrieve the child. When the mother does try to manage it herself, she frequently leaves the younger child unsupervised. The evidence establishes

that the older child's behaviors can be managed when handled properly, as the foster mother is very effective at doing—though such behaviors rarely occur when the children are with the foster mother. The foster mother has been called to the mother's visitations to calm the older child. In short, despite years of services and a desire to parent the children, the mother has not been able to exhibit the skills necessary to effectively parent them.

All of the foregoing resulted in child-in-need-of-assistance (CINA) proceedings being brought and the children being adjudicated as CINA. Due to lack of progress, the mother's rights were terminated in 2020. On appeal, our court reversed the termination, finding there was not clear and convincing evidence to support termination. *See In re I.N.*, No. 20-0793, 2020 WL 5651595, at *6 (Iowa Ct. App. Sept. 23, 2020).

Since visits resumed after the remand from our court, the same issues have continued to persist. Additionally, the older child's mental health and behaviors have deteriorated since resuming visits with the mother, and he has repeatedly expressed that he wishes to be adopted by the foster mother. The mother's rights were again terminated following a termination hearing, and she appeals again.

## II.     Standard of Review

We review the termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's findings of fact—especially as to findings of witness credibility—but we are not bound by them. *Id.*

## III.  Analysis

As is standard in termination cases, we follow a three-step analysis in our review.  *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We first determine whether a ground for termination under Iowa Code section 232.116(1) (2021) has been established.  *Id.* at 472–73.  Then, we determine whether termination is in the child's best interest by considering the framework set out in section 232.116(2). *Id.* at 473.  Finally, if termination is in the child's best interests, we determine whether any exception in section 232.116(3) should preclude termination of parental rights.  *Id.*  The child's best interest is our overriding concern.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

### A.  The Older Child (I.N.)

#### 1.  Statutory Ground

The juvenile court terminated the mother's rights as to the older child pursuant to Iowa Code section 232.116(1)(f).  For termination under this section, the court must find: (1) the child is at least four years old; (2) the child has been adjudicated in need of assistance; (3) the child has been removed from the parent's physical care for twelve of the last eighteen months or for twelve consecutive months with a trial period at home of less than thirty days; and (4) there is clear and convincing evidence the child could not be returned to the parent's care at the present time.  Iowa Code § 232.116(1)(f).  The mother concedes the first three elements and only challenges the fourth—that the child could not have been returned to her care at the time of the termination hearing.

At the time of the termination hearing, the mother had not progressed past fully supervised visitation.  The same concerns have been present through the

duration of this case. The mother's home is frequently unsanitary and in disarray. Despite the small apartment size and the services the mother has utilized, she has been unable to keep the home clean enough to be safe for the children. Visits were moved out of the home for a period of time due to safety concerns, and the children would often refuse to use the bathroom in the mother's home due to its uncleanliness. Further, the mother often left dangerous items within the children's reach, including medications and a box cutter.

Beyond the condition of the home, the mother did not progress past fully supervised visits because she was also unable to properly supervise the children. The older child has behavioral difficulties. He frequently exhibits outbursts and runs away during visits. The mother is unable to manage the child's behaviors, and she is unable to supervise the younger child while simultaneously attempting to deal with the older child. Additional service providers were needed at visits due to the mother's inability to properly supervise both children. The foster mother and service providers were often required to assist during visits. The mother was not only unable to physically manage the children, but she was also unable to retain and utilize the parenting techniques taught by service providers.

The mother's tendency to maintain relationships with individuals on the sex offender registry continued after the case was remanded to the juvenile court following reversal of the prior termination order. In addition to her continued association with sex offenders, she allowed some to stay in her apartment. In fact, one individual used her address as his permanent address for the sex offender registry. Though the children were not also staying in the home at the time, this is clear evidence that the mother continues to be unable to identify people who pose

a danger to her children—an issue that has been present since initial DHS involvement.

The main thrust of the mother's argument on appeal is that she has been engaged in services and is making efforts to improve. We agree that the mother is making an effort, and we commend her for it. Unfortunately, when it comes to the safety and well-being of children, trying is not enough. Results are what matter. Here, despite the mother's best efforts, she remains incapable of properly supervising and caring for the children. Because of her inability to properly supervise the children and her inability to maintain a safe home, we find clear and convincing evidence that the children cannot be returned safely to her home. Therefore, we affirm the juvenile court's finding that the statutory ground for terminating the mother's rights to the older child was established.

### 2. Other Issues

The mother makes a vague reference in her petition on appeal to the belief that additional time should have been granted to achieve case goals. However, the mother did not make a request for additional time to the juvenile court, and the court did not address any such request in its decision. Accordingly, error was not preserved on this issue, and we do not reach its merits. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (stating ordinary error preservation rules apply to termination-of-parental-rights proceedings). Even if error had been preserved, the length of time services have been provided without progress convinces us that additional time is not warranted.

**B.** **The Younger Child (N.N.)**

The district court terminated the mother's rights as to the younger child under Iowa Code section 232.116(1)(h). The mother apparently concedes that the statutory requirements were met, as she makes no argument to the contrary. Instead, she opts to argue only that termination is not in the child's best interests.

As discussed above, the mother failed to maintain a safe home, continued to associate with individuals who pose a risk to her children, and failed to exhibit the ability to properly supervise both children. The older child's behaviors are exacerbated as a result of visits with the mother, and the younger child has begun to model those same behaviors. The mother consistently requires prompts from service providers to check the younger child's diapers, and even with prompting often still fails to do so. In assessing what is in the child's best interests, we are to consider the child's safety; the child's physical, mental, and emotional conditions and needs; and the environment that will provide long-term nurturing and growth. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (citing Iowa Code section 232.116(2)). Making that assessment on our de novo review, we find clear and convincing evidence that termination of the mother's rights is in the child's best interests.

**C.** **Permissive Factors—Both Children**

Finally, the mother asserts that the bond she shares with both children should preclude termination. This argument implicates the third step of the three-step analysis—whether any of the exceptions under section 232.116(3) should be applied to overcome termination. Specifically, the mother argues for application of section 232.116(3)(c), which provides an exception when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the

time due to the closeness of the parent-child relationship." Application of any exception in section 232.116(3) is permissive, not mandatory, which means we are not required to apply the exception even if it has been established. *A.S.*, 906 N.W.2d at 475. The parent resisting termination bears the burden of proof to establish an exception. *Id.* at 476.

The mother failed to meet her burden. While the mother undoubtedly loves the children, the evidence does not show a close relationship between them or that termination would be detrimental to the children. In fact, it shows the opposite. The children have been removed from the mother's care since 2018. The children both refer to their foster mother as "mom" and to their biological mother by her first name. The children's behaviors are exacerbated by the anticipation of visits with the mother and during the visits. The children largely do not see the mother as a parent figure. Perhaps most telling in this regard is the older child's reaction after the reversal of the prior termination. Upon being notified that the adoption would be postponed and visits with the mother would resume, the older child was hospitalized with a mental-health crisis. Throughout much of this case following remand, the older child expressed his desire to be adopted by the foster mother and his resistance to visits with the mother. The younger child, similarly, often refuses to attend visits if the older child does not also attend, and he looks to the foster mother as his parental figure and source of comfort. Based on this evidence, termination is not precluded by a closeness of the relationship between the mother and the children.

**IV.    Conclusion**

As the statutory grounds for termination are met, termination is in the children's best interests, and a permissive exception has not been established, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED**.